**The CHASE MANHATTAN BANK, N. A.**

v.

**The STATE OF IRAN, also known as Islamic Republic of Iran, Bank Markazi Iran, et al.**

**No. 79 Civ. 6644.**

United States District Court, S. D. New York.

Feb. 15, 1980.

Milbank, Tweed, Hadley & McCloy by Edward J. Reilly, Richard Tufaro, New York City, for plaintiff.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman by Leonard Boudin, Eric M. Lieberman, New York City, for Bank Markazi.

## OPINION

GRIESA, District Judge.

Plaintiff Chase Manhattan Bank has moved for a preliminary injunction, which would restrain defendant Bank Markazi from further prosecution of an action brought by Bank Markazi against Chase in England. The motion is denied.

Bank Markazi is the central bank of Iran. For many years it has been a customer of Chase. As of November 1979, the critical time for purposes of the present action, Bank Markazi had three types of dollar accounts with Chase:

(1) A demand deposit account with Chase's head office in New York—sometimes referred to as the "operating account";

(2) A "call account" with Chase's London branch; and

(3) A time deposit account with Chase's London branch.

Bank Markazi also had various time deposit accounts with Chase's London branch in European currencies.

A call account in an English bank is similar to a demand deposit account in a United States bank. However, pursuant to English law, interest was paid to Bank Markazi on the call account at Chase's London branch. No interest was paid to Bank Markazi on the demand deposit account at Chase's head office in New York.

The time deposit accounts at Chase's London branch were governed by English law, pursuant to the express agreement of the parties.

In 1975 it was agreed between Bank Markazi and Chase that the balance in the operating account in New York would be kept generally within the range of $10 million to $15 million. It was agreed that if the balance in the New York account fell below $10 million, Chase would make a transfer from the London call account to make up the difference. Similarly, if the New York balance exceeded $15 million, Chase would transfer the excess to the call account in London. As of November 1979 the bulk of the funds which Bank Markazi had on deposit with Chase were in the London accounts.

On November 14, 1979 President Carter issued Executive Order 12170 entitled "Blocking Iranian Government Property." This order was issued pursuant to the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 et seq., and the National Emergencies Act, 50 U.S.C. §§ 1601 et seq. and 3 U.S.C. § 301. The order provided in part:

"I hereby order blocked all property and interests in property of the Government of Iran, its instrumentalities and controlled entities and the Central Bank of Iran which are or become subject to the jurisdiction of the United States or which are in or come within the possession or control of persons subject to the jurisdiction of the United States."

The Secretary of the Treasury was authorized to implement the order.

On November 14, 1979 the Department of the Treasury issued certain regulations under the President's blocking order. 31 C.F.R. § 535.101 et seq. One of these regulations, 31 C.F.R. § 535.902, provided:

"Branches and subsidiaries in foreign countries of persons subject to the jurisdiction of the United States are licensed to set-off their claims against Iran or Iranian entities by debit to blocked accounts held by them for Iran or Iranian entities."

As of November 14, 1979 Bank Markazi had the following dollar deposits with Chase:

| | |
|---|---|
| Operating Account in New York | $39,223,621 |
| Call Account in London | $253,139,888 |
| Time Deposit Account in London | $62,000,000 |

Thus the total dollar deposits in London were approximately $315 million as against approximately $39 million in New York.

As of November 14, 1979 the National Iranian Oil Company ("NIOC") had funds on deposit with Chase. Apparently the great bulk of these funds were in dollar accounts at the London branch. The total of the dollar deposits of NIOC at the London branch as of November 14, 1979 was $77,437,551.

Chase claims that, as of November 14, 1979 the State of Iran and various instrumentalities of the State of Iran were indebted to Chase in the total amount of $347,932,915. All or most of these debts were unmatured.

On November 15, 1979 Chase transferred the dollar balances of Bank Markazi and NIOC from London to New York and purported to offset them against debts of the Iranian governmental entities to Chase. Apparently Chase also purported to offset the European currency deposits in the London branch against Iranian debts.

Chase considered that its actions of November 15, 1979 with respect to the London accounts of Bank Markazi and NIOC were justified by the President's blocking order and the regulations issued thereunder, as well as Section 151 of the New York Debtor and Creditor Law, providing for the right of set-off against unmatured debts under certain circumstances.

On November 29, 1979 Bank Markazi commenced an action in the High Court of Justice in London, alleging that Chase is indebted to Bank Markazi in the sum of $320.9 million in relation to dollar deposits at the London branch of Chase.

On December 6, 1979 Chase commenced the present action against the State of Iran, Bank Markazi and the other alleged Iranian government entities claimed to be indebted to Chase. The prayer for relief requests that the court enjoin Bank Markazi's prosecution of the London action, declare Chase's

offset actions to be valid, or, alternatively, award damages of $366 million against defendants jointly and severally.

On December 6, 1979 an order to show cause was signed setting a hearing on Chase's motion for a preliminary injunction regarding Bank Markazi's London action, and granting Chase's *ex parte* application for a temporary restraining order. There were subsequent proceedings involving adjournments of the preliminary injunction motion, extensions of the temporary restraining order on consent, and still later an application by Bank Markazi to vacate the temporary restraining order. The preliminary injunction motion was heard on January 31, 1980, at which time the temporary restraining order was vacated.

Chase contends that it is entitled to a preliminary injunction preventing Bank Markazi from pursuing the London action, on the ground that it is threatened with conflicting judgments if the litigation proceeds in American and English courts, and further that it may be subjected to criminal liability for violation of the President's blocking order if it makes any payment to Bank Markazi pursuant to an English judgment. Chase contends that the American interests in enforcing the blocking order are paramount and that Bank Markazi is improperly seeking to evade that order by litigation in England.

Bank Markazi contends that it is entitled to seek a ruling in an English court on the question of its rights against Chase London in respect to the London accounts. Bank Markazi contends that it is most appropriate for it to seek a ruling in an English court on the issue of the effectiveness of the President's blocking order over an English branch of an American bank. Bank Markazi further argues that any attempt to enjoin it from pursuing the action in London is barred by the doctrine of sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*

■ I conclude that Chase has not made out a case for preliminary injunctive relief. The London action by Bank Markazi was commenced prior to the American action.

Since the London action deals with substantial bank accounts in Chase London, the action can hardly be considered to involve a vexatious or unreasonable choice of forum. It is true, as Chase points out, that there are questions of American law to be decided in determining the controversy between Chase and Bank Markazi. Chase is an American corporation. The transactions between Chase and Bank Markazi had numerous connections with Chase's head office in New York. The President's blocking order and the regulations issued thereunder appear intended to cover foreign branches of American banks. Chase transferred the London dollar deposits to New York following the issuance of the blocking order. Chase claims a right of offset under both federal and New York law. However, Chase goes too far in urging that its controversy with Bank Markazi should be decided solely under American law, in order to prevent evasion of the President's blocking order.

From a fair and objective legal standpoint, the crucial connection of this controversy with England must be recognized. Perhaps the ultimate legal question involved is whether the President's blocking order, and the regulations thereunder, are valid under English law with respect to an English branch of an American bank. It is reasonable, to say the least, for Bank Markazi to seek a determination of this question in an English court.

There is no reason to believe that the litigation cannot be handled in such a way as to prevent the entry of conflicting judgments. Various means of coordination are available. For instance, it may be appropriate to have a prompt determination of the issues of American law, by motion for partial summary judgment or otherwise, so that these determinations could be of assistance to the English court in its resolution of the ultimate question of the obligations of Chase London to Bank Markazi.

There is no realistic possibility of criminal liability being imposed upon Chase if it is required to comply with a judgment of the English court. A criminal penalty for vio-

lation of the blocking order can only be imposed for willful violation. 50 U.S.C. § 1706.

There is little purpose to be served in discussing the legal authorities dealing with the question of the power of a court to enjoin a party from litigating in another forum. The court clearly has such power, in appropriate circumstances. 7 Moore's Federal Practice ¶ 65.19 (2d ed. 1979). However, this power should be used sparingly. *Baltimore & Ohio R. R. v. Halchak,* 71 F.Supp. 224, 228 (W.D.Pa.1947). For instance, such an injunction can be entered where the second action is vexatious and designed to avoid the processes of the first action. *Harvey Aluminum v. American Cyanamid Co.,* 203 F.2d 105 (2d Cir.) *cert. denied,* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953). The authorities do not support the granting of an injunction in the present case.

I find it unnecessary to decide the sovereign immunity issue raised by Bank Markazi. However, it is worth observing that the dollar is the recognized reserve currency for international trade. Bank Markazi's large dollar accounts were undoubtedly held in view of this circumstance. It would seem particularly inappropriate for this court to attempt to prevent Bank Markazi from litigating in England with respect to the status of its accounts in the international reserve currency.

The motion for preliminary injunction is denied.

So ordered.