GARPEG, LIMITED, Petitioner,

and

The Chase Manhattan Bank, N.A., Intervenor,

v.

UNITED STATES of America, Respondent.

Nos. 84 Civ. 0435 (RWS), 84 Civ. 0437 (RWS).

United States District Court, S.D. New York.

March 23, 1984.

Steptoe & Johnson, Chartered, Washington, D.C., for petitioner; Gerald A. Feffer, James A. Bruton, Ira Paull, Washington, D.C., of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for intervenor; Andrew J. Connick, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty. for the Southern Dist. of N.Y., New York City, for

respondent; Jonathan A. Lindsey, Asst. U.S. Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

This action arises out of an Internal Revenue Service ("IRS") investigation of Gucci Shops, Inc. ("Gucci Shops") and Aldo Gucci. On December 19, 1983, an administrative summons was issued pursuant to sections 7602 and 7603 of the Internal Revenue Code of 1954 (the "Code"). On December 29, 1983, the summons was served on the Chase Manhattan Bank, N.A. ("Chase"). The summons requested production of documents and records at all Chase branches, including the branch in Hong Kong, pertaining to any accounts maintained by Garpeg, Limited ("Garpeg"), a Hong Kong corporation.

On January 19, 1984, Garpeg commenced this action by filing a petition to quash the IRS summons. On January 30, 1984, Garpeg obtained an ex parte "Interim Injunction" from the Supreme Court of Hong Kong, enjoining Chase from producing any documents from its Hong Kong branch in response to the IRS summons. The Hong Kong court has scheduled a hearing to determine whether the injunction should become permanent.

On February 6, 1984, Chase moved pursuant to 26 U.S.C. § 7609(b)(2)(C) and Fed. R.Civ.P. 24, to intervene as of right in this action, and for an order quashing the summons to the extent it requires production of documents maintained in the Hong Kong branch or, in the alternative, for a preliminary injunction pursuant to Fed.R.Civ.P. 65, requiring Garpeg (i) to discontinue all legal proceedings presently pending against Chase in the courts of Hong Kong, or (ii) to waive any and all rights to secrecy which it may possess by virtue of Hong Kong law with respect to the accounts maintained by Chase and to consent to the production of documents by Chase in response to the IRS summons. Chase's motion to intervene was granted orally by the court on March 5, 1984.

On February 17, 1984, the Government moved to enforce the summons and, like Chase, sought a preliminary injunction to prevent Garpeg from continuing the Hong Kong proceedings or, in the alternative, to require Garpeg to waive its rights under Hong Kong law.

For the following reasons, the Government's motion to compel enforcement of the summons is granted to the extent that all records concerning any financial transactions between Garpeg and Gucci Shops or between Garpeg and Aldo Gucci, including any financial transactions between Garpeg and other parties which were authorized by Aldo Gucci as signatory must be produced. Accordingly, Garpeg's petition and Chase's motion to quash the summons are granted in part and denied in part. The motion for a preliminary injunction or for a compelled waiver of rights is denied.

## I. Garpeg's petition to quash the summons

The IRS may issue a summons for the examination of books, papers and records of third-parties pursuant to Section 7602 of Title 26, United States Code. That section provides, in relevant part, as follows:

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
>
> (1) to examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) to summon ... any person having possession, custody or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act ... to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under

oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

"The summons power has consistently been interpreted as a broad mandate, designed to give the Service the 'authority ... necessary for the effective enforcement of the revenue laws.'" *United States v. Arthur Young & Co.*, 677 F.2d 211, 218 (2d Cir.1982) (quoting *United States v. Euge*, 444 U.S. 707, 715–16 & n. 9, 100 S.Ct. 874, 880–81 & n. 9, 63 L.Ed.2d 141 (1980)), *cert. granted*, 459 U.S. 1199, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983).

The basic criteria for judicial enforcement of an IRS summons are set forth in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). *Powell* requires that the Government make an initial showing

> that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed
> ....

Garpeg contends that the IRS has failed to demonstrate that it has met the requirements for enforcement set forth in *Powell*. Garpeg contends that the summons seeks irrelevant information and is overbroad and that the IRS has failed to comply with the notice provisions of section 7609(a)(1) of the Code.[1]

**Notice**

Section 7609(a)(1) of the Code provides in pertinent part:

> [N]otice of the summons shall be given to any person so identified [in the description of records to be produced contained in the summons] within 3 days of the day on which service is made, but no later than the 23rd day before the day

fixed in the summons as the day upon which such records are to be examined.

Garpeg maintains that it has not received notice. However, in a supplemental affidavit, submitted by Special Agent Richard J. Collery of the Criminal Investigation Division of the IRS ("Collery"), the IRS has demonstrated that notice of the summons was sent to Garpeg, at two different addresses in Hong Kong, by registered mail on December 30, 1983. Two mailing receipts and an acknowledgement of receipt are attached to the Collery supplemental affidavit.

**Relevance and Overbreadth**

■ Under Section 7602 of the Code, the IRS may summon only those records that "may be relevant or material" to its inquiry. The test for relevance is whether the documents requested "might have thrown light upon" the correctness of a return. *United States v. Arthur Young & Co., supra*, 677 F.2d at 218; *United States v. Noall*, 587 F.2d 123, 125 (2d Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979); *United States v. Shlom*, 420 F.2d 263, 265 (2d Cir.1969), *cert. denied*, 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); *Foster v. United States*, 265 F.2d 183, 187 (2d Cir.), *cert. denied*, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959).

Garpeg contends that a somewhat higher threshold of relevance is required in this case because the summons is directed not to the taxpayer but to a third party. In *United States v. Harrington*, 388 F.2d 520, 523 (2d Cir.1968), the Second Circuit noted that "judicial protection against the sweeping or irrelevant order is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation." In *Harrington*, the summons was directed to a lawyer who had as his client

---

1. Garpeg has also made certain administrative arguments, citing the Internal Revenue Manual and contending that the IRS failed to comply with its own standards for obtaining information abroad. The Court finds these arguments to be without merit for the reasons stated in the Government's reply memorandum of law.

the ex-wife of the taxpayer under investigation. The court stated:

> The question, and it is not always one that lends itself easily to solution, is whether from what the Government already knows there exists the requisite nexus between the taxpayer and records of another's affairs to make the investigation reasonable—in short, whether the "might" in the articulated standard, "might throw light upon the correctness of the return," is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered.

*Id.* at 524.

In *United States v. Arthur Young & Co., supra,* however, the Second Circuit declined to impose an enhanced burden on the IRS when it sought production of audit work papers by Arthur Young & Co., the independent auditor of the taxpayer under investigation. The court distinguished *Harrington,* noting that Arthur Young & . Co. was not a stranger to the taxpayer's concerns in the same way the lawyer in *Harrington* was to his client's ex-husband. *Id.* at 216.

█ Garpeg contends, and this court agrees, that the greater burden discussed in *Harrington* is appropriate in this case. Garpeg is an ostensibly independent corporation existing by virtue of the laws of Hong Kong. The question is then whether the IRS has demonstrated an adequate nexus between Garpeg and Gucci Shops or Aldo Gucci.

The IRS is conducting an investigation to determine the tax liability of Gucci Shops for the fiscal years ending August 31, 1979, 1980 and 1981, and the tax liability of Aldo Gucci for the years 1979, 1980 and 1981. During the 1979, 1980 and 1981 fiscal years, Gucci Shops made large payments to Garpeg, approximately $300,000 during each of the years in question, purportedly for management services. Gucci Shops claimed these payments as deductible expenses. The IRS contends that these payments are a subterfuge and may have been made for the purpose of avoiding tax liability to Gucci Shops. In addition, in 1981, Garpeg, as nominee, purchased commercial property in Beverly Hills on behalf of Gucci Shops. The property was subsequently transferred to Gucci Shops.

The IRS investigation has revealed that Aldo Gucci was one of two individuals authorized as signatories on Garpeg's bank account with Chase in Hong Kong. It has also revealed that, in fiscal year 1977, Gucci Shops issued a check for $120,000 made payable to "Garpeg and/or A. Gucci," and that, in 1977, Garpeg purchased the Beverly Hills home of Rona Barrett, which may have been used as one of Aldo Gucci's residences. The IRS asserts, albeit in conclusory fashion, that Garpeg is controlled by the Gucci family, and in particular by Aldo Gucci, and that Aldo Gucci may be a principal shareholder of Garpeg through a Panamanian corporation, Vanguard International Manufacturing, Ltd.

There is some merit, however, to Garpeg's contention that the summons is overbroad. The IRS seeks all records concerning any financial transactions of Garpeg for the period September 1, 1978 through December 31, 1981. The IRS maintains that all of Garpeg's bank records are relevant to the investigation because monies paid to Garpeg, or by Garpeg to others, may be income attributable to Gucci Shops or Aldo Gucci. It is the Government's position that the bank records might demonstrate that Garpeg funds were used to purchase assets for or to satisfy debts of Gucci Shops or Aldo Gucci, or were otherwise siphoned back to either Gucci Shops or Aldo Gucci, directly or through dummy corporations.

█ The summons power has been construed liberally and permitted to extend to sweeping document requests, *see, e.g., United States v. Noall, supra,* 587 F.2d at 127 (rejecting an *in camera* review as overly cumbersome); *Foster v. United States, supra,* 265 F.2d at 186–87; *United States v. Acker,* 325 F.Supp. 857, 862–63 (S.D.N.Y. 1971). As the Second Circuit noted in

*United States v. Arthur Young & Co., supra,* 677 F.2d at 216:

> Before the IRS knows where the issues lie, it has no choice but to utilize a general summons. Similarly, before the Service knows what the documents contain, it cannot describe them with any specificity. If the target's own opinion of relevance controlled, the entire audit process would be eviscerated. The judges in this circuit have therefore construed the summons power liberally, and allowed it to extend to widely-sweeping document requests. *See, e.g., United States v. Noall,* 587 F.2d at 127 (rejecting even in camera review as being overly cumbersome); *Foster v. United States,* 265 F.2d 183, 186–87 (2d Cir.), *cert. denied,* 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959); *United States v. Acker,* 325 F.Supp. 857, 862–63 (S.D.N.Y.1971) (Frankel, J.).

However, the Government may not exercise its investigative power without limit, and an examination is unreasonable "if it is overbroad, 'out of proportion to the end sought,' or if it is 'so unrelated to the matter properly under inquiry as to exceed the investigatory power.'" *United States v. Harrington, supra,* 388 F.2d at 523 (citations omitted).

██ In this case, unlike *United States v. Arthur Young & Co., supra,* the Government has not yet established a sufficiently strong nexus between the taxpayer under investigation and the third party record keeper. In *Arthur Young & Co.,* the accounting firm was hired to investigate the taxpayer's financial affairs and to involve itself in matters that were likely to become the subject of a government inquiry. *Id.* at 216. Here, aside from its conclusory allegations that payments to Garpeg by Gucci Shops are a "subterfuge" for income properly attributable to Gucci Shops, the IRS has only identified three checks to Garpeg for management services from Gucci Shops over a three year period and a purchase of commercial real estate by Garpeg as a nominee for Gucci Shops. Similarly, based on what it knows now, the IRS has asserted only the signatory power of Aldo Gucci

and the two transactions in 1977, the check from Gucci Shops to "Garpeg and/or A. Gucci" and the purchase of Rona Barrett's house, to establish the nexus between Garpeg and Aldo Gucci.

On the record in this case, I conclude that the Government has not made an adequate showing of its need to issue the summons in question. *See Venn v. United States,* 400 F.2d 207, 211–12 (5th Cir.1968). I conclude, however, that the IRS has established an adequate nexus between Garpeg and Gucci Shops and between Garpeg and Aldo Gucci to make some inspection of Garpeg records reasonable and that there is a realistic expectation that facts may be discovered to throw light on the correctness of the tax returns filed by Gucci Shops and Aldo Gucci for the years in question. *See United States v. Harrington, supra,* at 524. Accordingly, the summons will be enforced only to the extent necessary to require the production by Chase of records concerning any financial transactions between Garpeg and Gucci Shops or between Garpeg and Aldo Gucci, including any financial transactions by Garpeg with third parties authorized by Aldo Gucci as signatory. The Government may, of course, make an additional application to the court should it believe that full disclosure has not been made in accordance with this opinion. In addition, if further investigation indicates that additional relevant information is contained in Garpeg's records held by Chase, the IRS may issue a new summons which will, if necessary, be enforced.

## II. Chase's motion to quash the IRS summons to the extent it compels production of records from Chase's Hong Kong branch

Chase has moved to quash the IRS summons to the extent it requires production of records from its Hong Kong branch. Garpeg also seeks to prevent the disclosure of these records. Both cite Hong Kong banking secrecy law and principles of international law and comity to bar enforcement of the summons.

Garpeg and Chase have submitted affidavits by Hong Kong solicitors with respect to a banker's duty of secrecy under Hong Kong law. The duty is governed by common law principles and is not statutory in nature. A banker has a duty, arising out of the contract between the banker and his customer, to keep the affairs of the customer secret, including the state of the customer's account and all information obtained by the banker by virtue of the banking relationship. According to the affidavits, there are four exceptions to the duty not to disclose:

    (i) disclosure under compulsion of law;

    (ii) disclosure under a duty to the public;

    (iii) disclosure in furtherance of the interests of the banker; and

    (iv) disclosure with the express or implied consent of the customer.

Disclosure under any other circumstances subjects the banker to liability for damages.

As noted earlier, Garpeg sought and obtained an interim injunction from the Hong Kong Supreme Court enjoining Chase from producing Garpeg records. By this motion, Chase seeks to avoid the uncomfortable position of being subject to conflicting orders in two sovereign nations in which it does business. If the Hong Kong court permanently enjoins Chase's productions of Garpeg records, Chase's compliance with that order would be a failure to comply with the IRS summons and a potential contempt of this court. On the other hand, compliance with the IRS summons might be a violation of Chase's duties to its customer in Hong Kong and in contempt of the interim order of the Hong Kong court.

The Second Circuit has adopted a balancing test to determine whether subpoenaed documents maintained by the foreign branch of a United States bank must be disclosed despite local banking secrecy laws. *United States v. First National City Bank*, 396 F.2d 897, 902 (2d Cir.1968); *cf. Trade Development Bank v. Continental Ins. Co.*, 469 F.2d 35, 41 (2d Cir.1972). In *First National City Bank*, the Court noted that, "A state having jurisdiction to

prescribe or enforce a rule of law is not precluded from exercising its jurisdiction *solely* because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct." *First National City Bank, supra,* at 901 (quoting, Restatement (Second) Foreign Relations Law of the United States § 39(1) (1965)) (emphasis added by Court of Appeals).

The Second Circuit has adopted the approach to enforcement advocated by the Restatement (Second) Foreign Relations Law, *supra* § 40. *Id.* at 902; *In re Marc Rich & Co. A.G.*, M-11-188, slip op. at 17-18 (S.D.N.Y. Aug. 25, 1982); *S.E.C. v. Banca della Svizzera Italiana*, 92 F.R.D. 111, 115 (S.D.N.Y.1981); *accord, Trade Development Bank, supra,* at 41. Section 40 provides:

§ 40. Limitations on Exercise of Enforcement Jurisdiction.

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as

(a) vital national interests of each of the states, .

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

The first two factors are of critical importance, the last three appear to be less important. *S.E.C. v. Banca della Svizzera Italiana, supra,* at 119.

Recent proposed changes to the Restatement (Second) of the Foreign Relations Law suggest other factors which should be considered in determining the enforceability of foreign orders. These include the importance of the investigation in which the documents are sought, the degree of specificity of the request for documents, and the location in which the documents originated. Restatement (Second) of the Foreign Relations Law of the United States (Revised) § 420. (Tent. Draft No. 3, 1982). *See United States v. First National Bank of Chicago,* 699 F.2d 341, 346 (7th Cir. 1983); *United States v. Toyota Motor Corp.,* 569 F.Supp. 1158, 1162 (C.D.Cal. 1983). These factors, although relevant, have not yet been adopted by the Second Circuit.

■ The vital interest of the United States, or any state for that matter, in enforcement of its tax laws is unquestionable. *E.g., Bull v. United States,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) ("taxes are the life-blood of government, and their prompt and certain availability an imperious need"); *United States v. Vetco, Inc.,* 691 F.2d 1281, 1289 (9th Cir.1981) (United States' interest in collecting taxes and prosecuting tax fraud outweighs Swiss interest in protecting secrecy of business records). On the other hand, the interest of Hong Kong in maintaining its banking secrecy doctrine, a commercial concern, does not directly involve an express statutory concern vital to the government itself. Of course, the Hong Kong policy of banking secrecy makes Hong Kong banks more attractive to those who desire financial secrecy, thus providing some competitive advantage to Hong Kong banks. However, as the Second Circuit noted in *First National City Bank, supra,* at 903, with respect to German law, "it is surely of considerable significance that Germany considers bank secrecy simply a privilege that can be waived by the customer and is content to leave the matter of enforcement to the vagaries of private litigation. Indeed, bank secrecy is not even required by statute." The same can be said for Hong Kong bank secrecy doctrine.

Accordingly, I find that the interest of the United States in enforcing its tax laws significantly outweighs Hong Kong's interest in preserving bank secrecy. *Cf. In re Marc Rich & Co. A.G., supra,* slip op. at 18 (interest of United States in investigating violations of its tax laws outweighs Swiss interest in avoiding possible disclosure of business secrets).

The second important factor to consider is the potential hardship imposed upon Chase by inconsistent enforcement actions. Chase argues that it will be placed in an "untenable legal quandary" if Garpeg obtains a permanent injunction in Hong Kong and that it would be subject to an action for contempt and an action for damages in Hong Kong if it complies with the summons. This argument has been rejected repeatedly. *See United States v. Bank of Nova Scotia,* 691 F.2d 1384, 1388–89 (11th Cir.1982) (bank's assertion that it would be fundamentally unfair to require a "mere stakeholder" to incur criminal liability in the Bahamas rejected), *cert. denied,* —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983); *United States v. Vetco Inc., supra,* 691 F.2d at 1291 (possible criminal liability in Switzerland did not preclude enforcement and sanctions); *Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370, 1374 (10th Cir.1978), *cert. denied,* 439 U.S. 833 (1979); *S.E.C. v. Banca della Svizzera Italiana, supra,* 92 F.R.D. at 118. These cases are said to be inapposite because they did not involve a request for records of a person who was not under investigation by the United States, and the distinction unquestionably exists. However, essentially it is simply a resurrection of Garpeg's objections to the relevance of the summons. Once it has been established that the records are relevant to the IRS investigation because of the relationship between Garpeg and the taxpayer being investigated, it is not unreasonable to order the records produced.

The remaining factors of the Restatement balancing test—place of performance, nationality of the resisting party and the extent to which enforcement can be expect-

ed to achieve compliance with the rule—are of little assistance. Compliance with the contested part of the summons would take place in Hong Kong, the nationalities of the resisting parties, Chase and Garpeg, are United States and Hong Kong, respectively, and the extent to which enforcement can be expected is mere speculation. The additional factors proposed by section 420 of the revised Restatement—the importance of the investigation, the degree of specificity of the request, and the original location of the documents—weigh in favor of enforcement, except for the final factor. The investigation of the IRS is certainly important given the paramount interest of the United States in enforcing its tax laws, and this court has narrowly tailored the document request to further that investigation.

Based on a balance of the factors discussed above, I conclude that the summons should be enforced, as modified, and Chase should be compelled to produce the records requested, whether in Hong Kong or elsewhere. While I recognize the potential predicament of Chase if the Supreme Court of Hong Kong grants a permanent injunction, it may have to confront the unpleasant choice mentioned in *First National City Bank, supra,* at 905 (quoting *First National City Bank of New York v. Internal Revenue Service,* 271 F.2d 616, 620 (2d Cir.1959), *cert. denied,* 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960)), "the need to 'surrender to one sovereign or the other the privileges received therefrom' or, alternatively a willingness to accept the consequences." Further, there is a hope, indeed almost an expectation, that the principles of comity may be seen by the Hong Kong court in the same light as they are viewed here.

### III. Chase's motion for a preliminary injunction or, in the alternative, an order directing Garpeg to waive its Hong Kong bank secrecy rights

Chase has also moved for a preliminary injunction prohibiting Garpeg from pursuing any action against Chase in Hong Kong related to Chase's disclosure of Garpeg's bank records. In the alternative, Chase has moved for an order directing Garpeg to waive its Hong Kong bank secrecy rights. The Government joins in Chase's motion for a preliminary injunction, noting that section 7402(a) of the Code grants the district court jurisdiction to issue injunctions and to render such judgments and decrees "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a); *see United States v. First National City Bank,* 568 F.2d 853, 855–56 (2d Cir.1977) (describing the broad mandate of § 7402(a)). The Government has also joined in Chase's alternative motion to compel Garpeg to waive any rights it may have under Hong Kong bank secrecy laws.

#### 1. The preliminary injunction

In this Circuit, in order to obtain a preliminary injunction, the moving party must demonstrate:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

According to Chase, if the injunction is not granted, Chase, an organization which does business in numerous countries around the world, will suffer irreparable harm because it will be subject to conflicting orders of two courts of competent jurisdiction, and it will be in a legal, financial and public relations predicament.

Chase's claims of irreparable harm are somewhat speculative at this time. The Hong Kong court has not yet finally adjudicated Chase's duty of secrecy to be paramount to its duty to respond to a validly issued IRS summons, and it has not yet held Chase in contempt for violation of its interim order as a result of Chase's compliance with an order of a foreign court. In-

deed the Hong Kong court might relieve Chase of the interim restraint upon the issuance of the instant order. However, assuming the worst, the irreparable harm to Chase will be presumed, thus requiring a consideration of the merits.

■ To prevent irreparable harm, a federal court has the power to enjoin a party before it from pursuing similar litigation in a foreign tribunal. *See Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946 (D.Minn.1981), *aff'd*, 664 F.2d 660 (8th Cir. 1981); *Seattle Totems Hockey Club v. National Hockey League*, 652 F.2d 852 (9th Cir.1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982); *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2nd Cir.1953), on remand, 15 F.R.D. 14 (S.D.N.Y.1953) (Weinfeld, J.) (granting injunction); *Cargill, Inc. v. Hartford Accident & Indemnity Co.*, 531 F.Supp. 710 (D.Minn.1982). This extraordinary power should be used sparingly, *see Seattle Totems Hockey Club, Inc. v. National Hockey League, supra*, 652 F.2d at 855; *Philp v. Macri*, 261 F.2d 945, 947 (9th Cir.1958); *Cargill, Inc. v. Hartford Accident & Indemnity Co., supra*, 531 F.Supp. at 715, especially when an injunction against a party is tantamount to enjoining the tribunal of a foreign sovereign, *see Compagnie Des Bauxites De Guinea v. Insurance Company of North America*, 651 F.2d 877, 887 (3d Cir.1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1312 (1982); *Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577, 578 (1st Cir.1969); *Laker Airways, Ltd. v. Pan American World Airways*, 559 F.Supp. 1124, 1128 n. 14 (D.D.C. 1983), *aff'd sub nom., Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, (D.C.Cir.1984); *see also Medtronic, Inc. v. Catalyst Research Corp., supra*, 518 F.Supp. at 954 (injunction would indirectly affect powers of the foreign court); *but see In re Unterweser Reederei*, 428 F.2d 888, 892 (5th Cir.1970), *vacated on other grounds sub. nom., Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The issue is therefore not one of jurisdiction but rather of comity. *See Seattle Totems, supra* 652 F.2d at 855; *Compagnie Des Bauxites, supra*, 651 F.2d at 887; *Canadian Filters, supra*, 412 F.2d at 578; *Laker Airways, supra*, 559 F.Supp. at 1130; *Medtronic, supra*, 518 F.Supp. at 955.

■ The two part test to determine whether it is appropriate to enjoin a party from commencing a foreign proceeding was most recently stated in *Cargill, Inc. v. Hartford Accident & Indemnity Co., supra*, at 715:

> The threshold question is whether the parties are the same and resolution of the first action will be dispositive of the action to be enjoined.

If the threshold requirements are met, a foreign action should be enjoined "when it would (1) frustrate a policy in the forum issuing the injunction, (2) be vexatious, (3) threaten the issuing court's in rem or quasi in rem jurisdiction or (4) where the proceedings prejudice other equitable considerations." *Id.* Similarly, an injunction is appropriate if adjudication of the same issue in separate actions would result in "unnecessary delay, substantial inconvenience and expense to the parties and witnesses, and where separate adjudications could result in inconsistent rulings or a race to judgment." *Id.*

In the present situation, however, there is not an adjudication of the same issue between the parties in two separate actions. Garpeg has asserted no claim against Chase in this action, and Chase has asserted no claim against Garpeg, other than its request for injunctive relief. Moreover, although obviously related, the issue before this court, whether to enforce a validly issued IRS summons against Chase despite its conflicting obligations under Hong Kong law, is not the same as the issue before the Hong Kong court—the extent of Chase's duty to Garpeg under Hong Kong law faced with a presumptively valid order of this court.

■ Moreover, when separate rights arise under and are enforceable only through the laws of a foreign country, the

determination of a United States court cannot be dispositive of litigation abroad. *See Canadian Filters, supra,* 412 F.2d at 579; *Sperry Rand Corp. v. Sunbeam Corp.,* 285 F.2d 542, 545 (7th Cir.1960); *Medtronic, Inc., supra,* 518 F.Supp. at 955; *Western Electric Co. v. Milgo Electronic Corp.,* 450 F.Supp. 835, 838 (S.D.Fla.1978). This court has recognized that disputes between a foreign customer and a foreign branch of an American bank with respect to accounts maintained abroad are properly adjudicated before a foreign court. *See Chase Manhattan Bank, N.A. v. State of Iran,* 484 F.Supp. 832 (S.D.N.Y.1980).

Finally, it is far from clear that this court has the power to enforce any rights which Garpeg may have as a result of Hong Kong bank secrecy law. *See Laker Airways, Ltd., supra,* at 1133–38, *aff'd sub nom., Laker Airways, Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909 (D.C. Cir.1984).

 Accordingly, I find that Chase has not stated an adequate basis to warrant the extraordinary remedy of injunctive relief and, therefore, has failed to demonstrate likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. Chase's motion for a preliminary injunction is denied.

**2.  *A compelled waiver by Garpeg of its rights under Hong Kong law***

 In the alternative, Chase asks this court to order Garpeg to execute a waiver of its Hong Kong bank secrecy rights. In support of its motion, Chase cites *SEC v. Musella,* 83 Civ. 342 (CSH) (S.D.N.Y. Sept. 7, 1983) (oral opinion) and *United States v. Quigg,* No. 80–41–1, slip op. (D.Vt.1981). Both *Musella* and *Quigg* involved the prosecution of specific violations of United States laws and related to records concerning the defendants' accounts and transactions. In this case, Garpeg is neither a defendant nor a target of the investigation. Moreover, no court has ever compelled a foreign citizen or corporation to waive rights conferred upon it by foreign law.

Accordingly, Chase's motion for an order directing Garpeg to waive its Hong Kong bank secrecy rights is denied.

*Conclusion*

For the foregoing reasons, the summons will be enforced to the extent that all records concerning any financial transactions between Garpeg and Gucci Shops or between Garpeg and Aldo Gucci, and any financial transactions between Garpeg and other persons or entities which were authorized by Aldo Gucci or Gucci Shops must be produced by Chase, whether maintained in the United States or Hong Kong. The motion for a preliminary injunction, or, in the alternative, for an order directing Garpeg to waive its Hong Kong banking secrecy rights, is denied.

**IT IS SO ORDERED.**