**GARPEG, LIMITED, Petitioner,**

and

**Chase Manhattan Bank, N.A.,
Intervenor,**

v.

**UNITED STATES of America,
Respondent.**

No. 84 Civ. 0437 (RWS).

United States District Court,
S.D. New York.

July 10, 1984.

Gallop, Dawson, Kimelman & Clayman, New York City, for petitioner; Steven Kimelman, Charles E. Clayman, Chris McAliley, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for intervenor; Andrew Connick, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondent; Jonathan Lindsey, Asst. U.S. Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

This is one of several actions arising out of an Internal Revenue Service ("IRS") investigation of Dr. Aldo Gucci ("Gucci") and Gucci Shops, Inc. ("Gucci Shops") for the years 1979, 1980 and 1981.[1] On December 29, 1983, the IRS served upon The Chase Manhattan Bank, N.A. ("Chase") an administrative summons requesting production on January 30, 1984 of records relating to accounts maintained by Garpeg, Ltd. ("Garpeg") at any of Chase's branches, including its branches in Hong Kong. By opinion and order of March 23 and April 3, 1984, respectively, this court enforced the summons. Chase and Garpeg have appealed the enforcement order. On April 24, 1984, Chase produced to the IRS certain documents from its New York files and advised the IRS by letter that it could not fully comply with the summons because of the outstanding injunction in Hong Kong and that it was seeking to lift the injunction.

The Government has moved pursuant to 18 U.S.C. § 401 to hold Chase in civil contempt of the order filed on April 3, 1984 enforcing the IRS summons issued on December 29, 1983.[2] For the following reasons, the Government's motion is granted, and a fine of $10,000 per day is imposed on Chase if it does not comply with the summons within thirty (30) days after entry of this opinion and order. The thirty day period for compliance may obviate an application for a further stay depending upon whatever decisions are rendered in this and related cases, here and abroad.

## Procedural History

On January 19, 1984, Garpeg commenced this action by filing a petition to quash the summons. On January 26, 1984, Garpeg delivered a letter to Chase directing it not to comply with the summons, and, on January 30, 1984, Garpeg obtained an *ex parte* "Interim Injunction" from the High Court of Hong Kong, enjoining Chase from turning over to the IRS, or any other agency of the United States government, any documents relating to a Garpeg account maintained at Chase in Hong Kong. Chase intervened in this action and moved to quash the summons insofar as it required production of documents in Hong Kong on the ground that compliance would violate Hong Kong law. In the alternative, Chase moved for an order directing Garpeg to consent to production of records from Hong Kong. Both applications were denied by this court's opinion and order of March 23 and April 3, 1984, respectively.

On April 3, 1984, after a hearing at which Chase opposed Garpeg's application for a preliminary injunction, Judge Clough in the Hong Kong High Court entered an order enjoining Chase from complying with the summons pending a plenary trial of the matter. Judge Clough issued an opinion on

---

1. The other related actions include: *Vanguard International Mfg., Inc. v. United States,* 588 F.Supp 1229 (RWS); *Garpeg, Ltd. v. United States,* 588 F.Supp. 1237 (RWS); *Garpeg, Ltd. v. United States,* 583 F.Supp. 789; *Vanguard International Mfg., Inc. v. United States,* 588 F.Supp. 1234 (RWS); *United States v. The Chase Manhattan Bank, N.A.,* 584 F.Supp. 1080.

2. 18 U.S.C. § 401 provides:
   A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
   (2) Misbehavior of any of its officers in their official transactions;
   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

April 24, 1984. The order of the High Court has been appealed, and the appeal is likely to be heard by the Hong Kong appellate court in September, 1984. A plenary trial of the Hong Kong action is scheduled for the fall of 1984.

**Discussion**

■ Inability to comply with the court's order is a defense to a civil contempt citation. *See, e.g., Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); *United States v. Wendy,* 575 F.2d 1025, 1030 (2d Cir.1978). Chase contends that it is "realistically incapable" of complying with the April 3, 1984 enforcement order because compliance would be in contempt of the High Court of Hong Kong. It argues that its failure to produce the Hong Kong documents has been due to inability, not willfulness, bad faith or fault, *see Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958), and that it has made strenuous efforts to defeat the Hong Kong injunction.

■ The court does not question Chase's good faith effort to dissolve the Hong Kong injunction. However, the court in its March 23, 1984 opinion weighed the consequences of enforcement, considered the potential conflict with Hong Kong law, and concluded that the summons, as modified, should be enforced. Chase, of course, cannot now relitigate the propriety of the enforcement order, *see United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983); *Maggio v. Zeitz,* 333 U.S. 56, 68–69, 68 S.Ct. 401, 407–408, 92 L.Ed. 476 (1948). Instead, Chase relies on section 420(2) of the proposed Restatement of Foreign Relations Law of the United States (Revised) (Tent. Draft No. 3, March 15, 1982), and *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, supra,* to support its argument that the Hong Kong order makes compliance with the order of this court "impossible."

Section 420(2) of the proposed Restatement provides, in pertinent part:

If disclosure of information located outside the United States is prohibited by a law or regulation of the state in which the information or prospective witness is located ...

(a) the person to whom the order is directed may be required by the court to make a good faith effort to secure permission from the foreign authorities to make this information available;

(b) the court may not ordinarily impose the sanction of contempt, dismissal or default on the party that has failed to comply with the order for production, except in cases of deliberate concealment or removal of information or of failure to make a good faith effort in accordance with paragraph (a) ...

In *Societe Internationale,* the district court ordered the petitioner, a Swiss holding company, in a suit for the return of property under section 9(a) of the Trading with the Enemy Act, 40 Stat. 419, as amended, 50 U.S.C.App. § 9(a), to produce certain records of its Swiss bank. The petitioner failed to produce the records on the grounds that production would violate Swiss penal law and that a Swiss order prohibiting production was in effect. The district court subsequently dismissed the complaint with prejudice under Fed.R. Civ.P. 37 for failure to produce the records. The Supreme Court held that the production order was justified but that Rule 37 did not authorize dismissal for noncompliance with the production order "when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith or any fault of petitioner." *Id.* 357 U.S. at 212, 78 S.Ct. at 1095.

Neither the proposed Restatement nor *Societe Internationale* is directly controlling. *Societe Internationale* dealt with the district court's authority under Fed.R. Civ.P. 37. The proposed Restatement, while closer on point, has not been adopted by the Second Circuit, and, in any event, purports only to state the general rule when disclosure of information is prohibited by a law or regulation. In this case, the Hong Kong injunction is based on the

**1243**

court's interpretation of common law rather than a statute or regulation. Moreover, the injunction is only intended to preserve the status quo pending a trial on the merits, although, of course, penalties for non-compliance are severe, including sequestration of assets, committal and/or fine.

In deciding whether to issue the injunction, the Hong Kong court first considered whether Garpeg and its co-plaintiffs had demonstrated a serious question to be tried and then engaged in a "balance of convenience." The court granted the injunction, despite the lack of satisfactory evidence as to the nature and extent of commercial injury to Garpeg and its co-plaintiffs if no injunction were issued and the obvious ability of Chase to compensate them for any loss sustained as a result of disclosure by Chase. However, recognizing that denial of the injunction would effectively prevent Garpeg and the others from obtaining the principal relief they sought, the Hong Kong court concluded that "the crucial question for this court at this stage of the proceedings is whether the Bank will be in any real jeopardy of successful contempt proceedings if, by reason of its being injuncted by this court, it fails to comply with the enforcement orders of the New York District Court." The court concluded Chase was in no "real jeopardy" of contempt and issued the injunction.

Sanctions short of contempt are not available to induce Chase's compliance with the summons. For example, adverse findings of fact would have no effect against Chase in an action such as this. *See, e.g.,* Restatement of Foreign Relation Law of the United States (Revised) (Tent. draft No. 3, March 15, 1982) § 420(2)(c); *Societe International v. Rogers, supra,* at 213, 78 S.Ct. at 1095. Accordingly, the court concludes that it is appropriate to adjudge Chase in civil contempt and to impose a fine of $10,000 per day to commence thirty (30) days after entry of this opinion and order in the event Chase does not comply with the IRS summons. In view of the pending appeal in the Court of Appeals of the order enforcing the summons, the present thirty day stay is without prejudice to a further application, should the circumstances warrant.

**IT IS SO ORDERED.**