976 F.Supp. 1269 (1997)
Patricia WADE for Tara ROBINSON, a minor, Plaintiff,
v.
John J. CALLAHAN, Ph.D.,[1] Acting Commissioner of Social Security, Defendant.
No. 4:95CV2371-CEJ (LOD).
United States District Court, E.D. Missouri, Eastern Division.
July 1, 1997.

*1270 ORDER

JACKSON, District Judge.
This matter is before the Court on the parties' cross-motions for summary judgment. See Fed.R.Civ.P. 56.
Pursuant to 28 U.S.C. § 636(b), the Court referred all pretrial matters to United States Magistrate Judge Lawrence O. Davis for review and recommended disposition. On June 11, 1997, Judge Davis issued a Report and Recommendation, recommending that the defendant's motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied. No objections to the Magistrate Judge's Report and Recommendation were filed and the time allowed for doing so has expired.
Accordingly,
IT IS HEREBY ORDERED that the Report and Recommendation of United States Magistrate Judge Lawrence O. Davis is sustained, adopted, and incorporated herein.
IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.
IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
DAVIS, United States Magistrate Judge.
This case was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b). Presently before the Court are the cross-motions of the parties for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure.

*1271 PROCEDURAL HISTORY

Patricia Wade, on behalf of her daughter plaintiff Tara Robinson, filed an application for child supplemental security income (SSI) under Title XVI of the Social Security Act (the Act). (Tr. 66-70) Plaintiff alleged that she was disabled since birth because of lead poisoning and a heart murmur. (Tr. 66) The application was denied initially and on reconsideration. (Tr. 71-72, 77-78, 82-83, 88)
On August 16, 1994, a hearing was held on plaintiff's application before an Administrative Law Judge (ALJ). (Tr. 27-39) On January 17, 1995, the ALJ rendered a decision in which he found that plaintiff was not under a disability as defined by the Act and denied her application for benefits. (Tr. 9-20) Subsequently, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 4-5) The decision of the ALJ is therefore the Commissioner's final decision and is reviewable in this proceeding. 42 U.S.C. § 405(g).

MEDICAL EVIDENCE
The medical evidence shows that on March 13, 1989 Dr. SuChiung Chen saw plaintiff on a return visit. (Tr. 199) Plaintiff was 16 months old at the time and was being treated for a heart murmur. (Tr. 199) Dr. Chen found that plaintiff was well, active and had no intolerance for exercise, and was not on any medication. (Tr. 199) In July 1993 Dr. Chen next saw plaintiff. (Tr. 206) Plaintiff complained of tiring easily, although she could play outside for four or five hours. (Tr. 206) He diagnosed plaintiff as suffering from atrial septal defect (ADS). (Tr. 207)
A history progress note dated July 26, 1993 from Cardinal Glennon Children's Hospital stated that plaintiff's mother was contacted and informed that she needed to set up a date to have plaintiff's ADS closed. (Tr. 211) Ms. Wade stated that she did not want any surgery done. (Tr. 211) Ms. Wade was told that it was very important that she talk to the doctors so that she understood why the ADS closure was important and what could happen if surgery was not performed. (Tri 211)
Ms. Wade then asked if Dr. Chen would fill out her SSI forms, because plaintiff is always tired due to her heart defect. (Tr. 211) Ms. Wade was told that if plaintiff had her heart fixed she would be normal. (Tr. 211) Ms. Wade said she would talk to the doctors about that, but that she could not come in on Thursday because she had an appointment at the SSI offices. (Tr. 211)
On November 30, 1993 Dr. Paul Rexroat, a licensed psychologist, examined plaintiff. (Tr. 216-222) He found plaintiff was functioning in the low average range of intelligence, her motor skills were age appropriate, and her speech was normal. (Tr. 221-222)
On October 22, 1994, Dr. Robert Kron examined plaintiff. (Tr. 225,-231) Dr. Kron stated that plaintiff suffered from pulmonary stenosis since birth, lead intoxication since she was one, and slow development since about the age of four. (Tr. 229) Plaintiff's mother reported that plaintiff gets tired with exercise and so she is not involved in any school physical activities. (Tr. 229-230)
Dr. Kron also noted plaintiff was tested when she was a year old and found to have increased lead levels. (Tr. 230) She had been followed at the Lead Clinic until 1993. (Tr. 230) Plaintiff never received any shots for lead intoxication but was given vitamins and iron. (Tr. 230) At her last clinic visit her lead levels were found to be fairly low. (Tr. 230)
Dr. Kron found plaintiff to be a well developed child and in no acute distress. (Tr. 230) Her mental status was somewhat satisfactory and her motor functions and reflexes were good. (Tr. 230)

HEARING TESTIMONY
Ms. Wade testified that she knew since plaintiff was born that she had a hole in her heart. (Tr. 29-30) Plaintiff was treated at the Lead Poison Clinic twice a month and received checkups every three months at the Florence Hill Clinic. (Tr. 31)
Ms. Wade also testified that plaintiff gets up, eats breakfast, dresses herself, and goes outside for an hour or two before she gets real tired. (Tr. 31) She then comes inside and lies around the rest of the day. (Tr. 31) Plaintiff was unable to participate in physical education in kindergarten due to her getting tired easily. (Tr. 32)
*1272 Plaintiff does not take any medications except vitamins. (Tr. 33) Ms. Wade discussed having plaintiff's heart defect corrected via surgery with Dr. Chen. (Tr. 33) Dr. Chen told her that there was a 50/50 chance that surgery would make plaintiff normal. (Tr. 34) Other doctors told her there is a chance that the hole in plaintiff's heart will close on its own. (Tr. 34)
Ms. Wade further testified that three times a week plaintiff goes to bed at 9:00 p.m., gets up at 10:00 a.m., and goes back to sleep at 5:00 p.m. (Tr. 35) Ms. Wade and her mother dress and bathe plaintiff. (Tr. 35, 36) Plaintiff also has trouble with her memory due to her lead poisoning. (Tr. 36)

THE ALJ'S DETERMINATION
The ALJ found that plaintiff suffers from a heart murmur with atrial septal defect, pulmonary stenosis, and an episode of elevated lead levels, but that she does not have a medical impairment that meets the criteria under the applicable statues and regulations. (Tr. 19) He also found that plaintiff's complaints were not fully credible. (Tr. 19)
The ALJ concluded that plaintiff did not have an impairment or combination of impairments that was functionally equivalent to any impairment in the listings and he cited to several regulations, including 416.926a. (Tr. 19) The ALJ further concluded that plaintiff's impairments would not substantially limit her so as to prevent her from attaining developmental milestones at an age-appropriate rate, from engaging in age appropriate activities of daily living in self-care, play and recreation, school and academics, and peer relationships. (Tr. 19)

DISCUSSION
Plaintiff alleges that the ALJ was in error in finding that plaintiffs impairments do not meet or equal the listing of impairments, because the ALJ failed to consider plaintiff's overall functional limits. Plaintiff also claims that the ALJ only explored plaintiff's individualized functional assessment in a "tercery" manner. Furthermore, plaintiff claims that the ALJ erroneously found Ms. Wade's testimony to lack credibility. Plaintiff further argues that the ALJ failed to consider plaintiff's very low intellectual scores and school absences. Lastly, plaintiff claims that the ALJ improperly discounted plaintiff's fatigue as a result of her playing too long.
The undersigned finds that based upon a review of the entire record as a whole, there was no error in the ALJ's decision in finding that plaintiff is not disabled.
The Court first notes that both plaintiff and the ALJ analyzed plaintiff's case under standards that are no longer applicable.[2] The applicable standard for children seeking SSI based on disability was recently changed. See Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. 104-193, 110 Stat. 210 (August 22, 1996). Under the prior standard, a child under the age of 18 was considered disabled if "he suffers from any medically determinable physical or mental impairment of comparable severity [to that of an adult]." 42 U.S.C. § 1382(a)(3)(A). The new standard provides:
An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. (emphasis added)
42 U.S.C. § 1382c(a)(3)(C)(i). The regulations interpreting this statute have also been changed.
The effective date provision for the new statute makes clear that it applies to cases, such as the case at bar, that are pending for judicial review after being denied administratively:
(i) In General.  The provisions of, and amendments made by, subsections (a) and (b) of this section shall apply to any individual who applies for, or whose claim is finally adjudicated with respect to, benefits under title XVI of the Social Security Act *1273 without regard to whether regulations have been issued to implement such provisions and amendments.
(ii) Determination of Final Adjudication.  For purposes of clause (i), no individual's claim with respect to such benefits may be considered to be finally adjudicated before such date of enactment if, on or after such date, there is pending a request for either administrative or judicial review with respect to such claim that has been denied in whole, or there is pending, with respect to such claim, readjudication by the Commissioner of Social Security pursuant to relief in a class action or implementation by the Commissioner of a court remand order.
42 U.S.C. § 1382c, Historical and Statutory Notes, Effective Dates; Pub.L. 104-193, § 211(d)(1)(A)(i) and (ii).
The relevant amendments to the Act are more restrictive in their standard for child disability under the Social Security Act than the prior law. Strawder v. Chater, 955 F.Supp. 91, 92-93 (E.D.Mo.1997). However, as always, judicial review of plaintiff's case is Limited to determining whether the final decision of the Commissioner is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Baker v. Sec. of Health and Human Services, 955 F.2d 552, 554 (8th Cir.1992).
Plaintiff's argument that the ALJ only explored the "domains" of plaintiff's individualized functional assessment in a summary manner is based on the prior statute. There is no longer any requirement that the ALJ undertake such an analysis under the new statute. See Pub.L. No. 104-193, § 211(b)(2), 110 Stat. 2105, 2189, ("The Commissioner of Social Security shall discontinue the individualized functional assessment for children set forth in sections 416.924d and 416.924e of title 20, Code of Federal Regulations") Additionally, while under the prior regulations, "domains," which described a child's major spheres of activity, were examined in performing the individual functional assessment of a child, such an assessment is no longer performed, and the new regulation makes no reference to "domains." See § 416.924b. Thus, any alleged deficiency by the ALJ in connection with plaintiff's individualized functional assessment and her domains is no longer a basis for setting aside the ALJ's decision.
Plaintiff also argues that the ALJ failed to consider her overall functional limits which result from her impairments to determine if those functional limits are as severe as the disabling functional consequences of any listed impairment when he found that plaintiff did not have any impairment which met or equals any of the impairments in the listings. Plaintiff claims this failure violated 20 C.F.R. § 416.926a(b)(3).
Plaintiff's argument is again misplaced in that § 416.926a(b)(3) has been revamped. The phrase "overall functional limits" appears nowhere in the new version of § 416.926a(b)(3). Thus, any argument based on the ALJ's deficient findings with regard to plaintiff's overall functional limits is irrelevant.
Furthermore, the ALJ complied with the requirements of the prior regulation. Under the prior regulation, if a child claimant did not have an impairment that met the requirements of a listed impairment, the Secretary would determine whether the claimant had an impairment or combination of impairments that was equivalent in severity to a listed impairment. § 416.966a(a). Equivalence would be determined[3] by assessing the child's overall functional limitations which result from her impairments, i.e., what she could not do due to her impairments. Id. This was done by comparing the child's functional limitations with the functional consequences of any listed impairment which included the same functional limitations. Id. The primary focus was on the disabiling consequences of the child's impairments. Id.
The regulation also listed 12 examples of child impairments that were functionally equivalent to the listings. Two of the listed examples read as follows:
(6) Any physical impairment(s) or combination of physical and mental impairments *1274 causing marked restriction of age-appropriate activities of daily living and marked difficulties in maintaining age appropriate social functioning;
(7) Any physical impairment(s) or combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate norms.
In sum, the ALJ was required to analyze plaintiff's impairments to see if the restrictions they impose on her ability to function were equivalent with the functional consequences of a listed impairment.
The ALJ stated that in making a functional assessment of plaintiff that her development "in regard to age appropriate domains ... must be considered." (Tr. 16) The ALJ noted that plaintiff's mother testified that plaintiff is able to attend school; play with other children; has a normal appetite; and is able to dress herself. (Tr. 16) Furthermore, she was of average intelligence, does not have any difficulties in a classroom setting, and there are no restrictions on her physical activities. (Tr. 17)
The ALJ also stated that there was no evidence that plaintiff has any behavioral problems or emotional difficulties; she has average motor function, verbal and visual skills; and she has no abnormality with regard to height, weight, or other physical attributes. (Tr. 17) After finding that plaintiff did not have an impairment or combination of impairments equal to the listings, the ALJ concluded that there was nothing in the record showing that plaintiff had any significant limitations in her ability to function independently, appropriately, or effectively in an age appropriate manner, except for a less than moderate degree of motor function impairment. (Tr. 18-19)
The ALJ concluded that plaintiff did not have an impairment or combination of impairments that was functionally equivalent to any impairment in the listings and he cited to several regulations, including 416.926a. (Tr. 19) The ALJ further concluded that plaintiff's impairments would not substantially limit her so as to prevent her from attaining developmental milestones at an age-appropriate rate and from engaging in age appropriate activities of daily living in self-care, play and recreation, school and academics, and peer relationships. (Tr. 19)
The Court fails to see any deficiency in the ALJ's findings with regard to § 416.926a. The Court first notes that all of these findings are supported by the record and are not contested by plaintiff. The ALJ clearly considered plaintiff's functional restrictions caused by her impairments, including her age appropriate activities of daily living (going to school, dressing herself, etc.) and any difficulties in her maintaining age appropriate social functioning (behavioral problems). He also considered the effect of her physical impairments on her ability to function independently outside her home within age-appropriate norms and determined that plaintiff's daily living, social functioning, and ability to function outside the home in an age appropriate manner were unaffected. He then concluded that plaintiff's functional limitations caused by her impairments were not functionally equivalent to a listed impairment.
Thus, the ALJ's findings show that plaintiff's impairment were not functionally equivalent to any of the listed examples of consequences of impairments contained in § 416.926a(d), and specifically, by the language used, subsections (6) and (7). Plaintiff's argument that the ALJ failed to undertake the analysis required under § 416.926a is mistaken.
Plaintiff next claims that the ALJ erroneously found Ms. Wade's testimony to lack credibility. Plaintiff argues that her fatigue, as reported by Ms. Wade, was consistent with what is wrong with plaintiff. Additionally, plaintiff argues that her complaints of fatigue are in the medical records.
The ALJ noted that plaintiff has generally been described as a well child. (Tr. 17) He then found that plaintiff is not on any current regular medical therapy or treatment and that her heart murmur was stable. (Tr. 17) Her elevated lead levels responded well to medical treatment with no ongoing symptoms. (Tr. 17)
The ALJ found that plaintiff was of average intelligence, did not have any difficulties *1275 in a classroom setting, and that there was no restrictions on her physical activities. (Tr. 17) The ALJ stated that there was no evidence that plaintiff has any behavioral problems or emotional difficulties; she has average motor function, verbal and visual skills; and she has no abnormality with regard to height, weight, or other attributes. (Tr. 17) The ALJ concluded in light of the foregoing that plaintiff's allegations of disability, as presented by Ms. Wade, were not "credible, substantiated by the medical evidence of record or consistent with the records as a whole." (Tr. 17)
Thus, the ALJ properly discounted Ms. Wade's testimony due to inconsistencies in the record. The evidence shows that plaintiff has no marked and severe functional limitations as required. 42 U. § .C. § 1382(a)(3)(A). This is inconsistent with plaintiff's claims of disability. The same is true with regard to plaintiff's lack of ongoing medical treatment. Bolton v. Bowen, 814 F.2d 536, 537 (8th Cir.1987). There is nothing improper in the ALJ relying on these inconsistencies to discount Ms. Wade's testimony. Thus, regardless of any finding of fatigue, the ALJ could discount Ms. Wade's testimony due to its inconsistencies with the evidence in the record.
Plaintiff also takes issue with the ALJ labelling her complaints of fatigue as simply "playing too long" and with conducting an improper analysis of plaintiff's domains. The ALJ noted that while Ms. Wade stated that plaintiff's fatigue due to her heart condition is aggravated by excessive exercise, she also indicated that plaintiff can play for up to five hours with other children. (Tr. 17)
The ALJ concluded that it was not unreasonable to expect a young child to become fatigued based on such exertion, and thus such complaints did not indicate any significant functional limitation. (Tr. 17) Finally, he noted that no treating or examining source has placed any limits on her activities from a medical or mental standpoint. (Tr. 18)
As detailed above, there no longer is a requirement that an ALJ perform any "domains" analysis. Additionally, to the extent there was a conflict in the evidence as to the cause and extent of plaintiff's fatigue, it was the duly of the ALJ and not this Court to resolve that dispute. Hopkins v. Bowen, 850 F.2d 417, 420 (8th Cir.1988) This Court cannot second-guess that determination. The mere fact that the ALJ found against plaintiff does not provide a basis for setting aside his decision.
Plaintiff further argues that in analyzing her "domains," the ALJ failed to consider plaintiff's very low intellectual scores and the resulting effort she would have to put forth to keep up with her peers, and school absences. In a familiar refrain, any complaint concerning the ALJ's domains analysis is no longer relevant and not a basis for reversal.
Furthermore, the ALJ repeatedly addressed the findings concerning plaintiff's intellectual scores, noting that she was of average intelligence. (Tr. 17-18) He also noted that Ms. Wade testified that plaintiff had missed many days of school due to illness and fatigue. (Tr. 16)
Thus, although plaintiff may have a low average I.Q. which requires a greater effort to keep up, the record shows that plaintiff has been able to keep up, Furthermore, her intelligence is still within the average range. Finally, the ALJ considered plaintiff's school absences, but found that based on the entire record there was insufficient evidence that plaintiff was suffering from a disabling impairment. The decision that plaintiff is not disabled is supported by substantial evidence and thus, even if plaintiff is frequently absent from school, that fact does not overcome the fact that she does not have a disabling impairment.
In the end, this is a very easy case. There is clearly substantial evidence in the record as a whole to uphold the ALJ's finding that plaintiff does not have a medically determinable physical or mental impairment that renders her disabled. The ALJ's decision should be affirmed.
THEREFORE, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment be granted.
IT IS ALSO RECOMMENDED that plaintiff's motion for summary judgment be denied.
*1276 The parties are advised they have eleven (11) days in which to:file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir.1990).
NOTES
[1] President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan should be substituted for Shirley S. Chater as the defendant in this suit. No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] The ALJ, however, is not to be faulted as the changes became effective after the date of his decision.
[3] There were also two other methods in the regulation for determining equivalence that would not have applied to this case.