**XĔLAN, INC., et al., Petitioners,**

v.

**UNITED STATES of America, Respondent.**

**AmerUsLife Insurance CompanY, Intervenor.**

**No. M–04–83.**

United States District Court,
S.D. Iowa,
Central Division.

Feb. 7, 2005.

## ORDER

LONGSTAFF, Chief Judge.

This matter is now before the Court upon the Report and Recommendation filed December 23, 2004 by the Honorable Chief U.S. Magistrate Judge Ross A. Walters concerning the petition to quash summons and the motion for summary enforcement. After obtaining an appropriate extension, the petitioners filed their objections to the magistrate's Report and Recommendation January 21, 2005, with a supplemental declaration by John M. Colvin filed that same date.

The Court has now carefully reviewed all relevant material pertaining to this matter and finds itself in complete agreement with the Report and Recommendation of Judge Walters. Accordingly,

IT IS ORDERED that the Report and Recommendation filed December 23, 2004 be and is hereby adopted in full and the petitioners' petition to quash summons is denied and respondent's motion for summary enforcement of the administrative summons in issue is hereby granted.

As recommended in the Report and Recommendation, the Court hereby finds that counsel for the government and AmerUs are hereby directed to confer in an effort to narrow or resolve AmerUs's objections which were submitted as the intervenor in this proceeding. Counsel shall submit a report to the Court no later than February 28, 2005 concerning the status of AmerUs' objections.

**REPORT AND RECOMMENDATION CONCERNING PETITION TO QUASH SUMMONS AND MOTION FOR SUMMARY ENFORCEMENT**

WALTERS, Chief United States Magistrate Judge.

Petitioners initiated this action to quash an Internal Revenue Service ("IRS") administrative summons issued June 1, 2004, and served June 4, 2004, on AmerUs Life Insurance Company, the parent company of Indianapolis Life Insurance Company (collectively "AmerUs") in the matter of "a Tax Shelter Investigation Under IRC Section 6700 and 7408 of xélan, Incorporated." (Pet.Ex. A). The summons requires AmerUs to produce documents pertaining to the xélan 419 Welfare Benefit Plan (hereafter "419 Program"), including documents that would reveal identity of participants in the 419 Program. The summons is much like a summons issued to AmerUs with respect to the examination of the tax liabilities of Dr. David A. and Mrs. Margaret L. Cohen and the professional corporation of Dr. Cohen. That summons was the subject of similar proceedings in a separate miscellaneous case in this district, No. M–03–83, and a Report issued by the undersigned on November 18, 2004 (hereafter "November 18 Report").

The government has responded to the petition with a motion for summary enforcement of the summons. AmerUs has intervened also asking that the summons be quashed. AmerUs and the government have agreed the Court should postpone ruling on AmerUs' objections believing that resolution of the dispute between xélan and the government will narrow, if not resolve, AmerUs' objections. Accordingly, this report and recommendation resolves only the objections raised by xélan.[1]

**FACTUAL BACKGROUND**

The petitioners are xélan, Incorporated, certain of its affiliated companies, and Dr. L. Donald Guess, xélan's founder.[2] Xélan, The Economic Association of Health Professionals is a membership-only organization that markets financial management services to doctors and dentists.[3] Xélan was founded in 1971 by Dr. Guess and has provided financial services to over seventy thousand doctors and dentists.

IRS Agent Jay Higgins is conducting a tax shelter compliance investigation of xélan. Higgins is assigned to something called the "Abusive Tax Avoidance Transaction group" of IRS's Small Business/Self–Employed Division. (Higgins Decl. ¶ 1). He has obtained documents, testimony, audio and videotapes concerning xélan. According to Higgins Dr. Guess tells prospective participants that the tax code does not require them to pay taxes on what they earn but "only on what you spend." Xélan is based on the concept of "saving your excess earnings, deductibly." (*Id.* at ¶ 15). The xélan program involves the determination of how much a doctor requires to meet his or her basic

---

1. Unlike in No. M–03–83, Chief Judge R.E. Longstaff has not expressly referred this case to the undersigned for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). However, in view of the previous referral in No. M–03–83, I consider the present petition and motion as having likewise been referred for a report and recommendation under the implied referral rule in LR 72.1(g) and have proceeded accordingly.

2. From this point petitioners are collectively referred to herein as "xélan" except where the context indicates differently.

3. Additional factual background concerning xélan and the IRS investigation of it and those participating in its programs can be found in the November 18 Report and in the published opinion of the United States District Court for the Eastern District of Pennsylvania in *Cohen v. United States,* 306 F.Supp.2d 495 (E.D.Pa. 2004).

lifestyle needs, plus taxes, and diverting the doctor's "surplus pretax earnings" into a "practice savings account." Xélan has a number of what Dr. Guess has referred to as "deductible savings plans" to assist doctors in achieving their goals, one of which is the 419 Program. (*Id.* at ¶¶ 16, 29).

The starting point for each xélan participant is determination of the participant's "critical capital mass" (CCM). This represents the amount of money the doctor in question will need to meet his or her lifestyle needs for the doctor's expected lifetime and if married, that of the doctor's spouse. (Higgins Decl. at ¶ 17). Once the CCM is calculated, one of xélan's financial consultants prepares a plan for the doctor to accumulate the CCM amount via one or more of xélan's deductible savings plans. The goal is to enable the doctor to divert pretax dollars to increase the doctor's net worth until the doctor achieves CCM. (Higgins Decl. at ¶ 18).

The 419 Program is founded on I.R.C. § 162 which permits a Subchapter C corporation to deduct as ordinary and necessary business expenses the entire annual cost of providing life and severance insurance coverage to its employees through a welfare benefit trust which meets the requirements of I.R.C. § 419A(f)(6). Xélan's 419 Program is designed to do just that. Plans which qualify under § 419A(f)(6) are commonly referred to as "10-or-more-employer" plans. Corporations that participate in such plans and their employees may receive substantial tax benefits. But if the plan does not qualify under § 419A(f)(6), those tax benefits are lost.

The benefits payable under the 419 Program are funded by life insurance policies purchased from AmerUs.

Higgins' investigation apparently has several aspects. I.R.C. § 6700(a)(2)(A) provides penalties for those who promote "abusive tax shelters" by misrepresenting the tax benefits involved. Higgins is in-

vestigating whether xélan, Inc. made false or fraudulent statements to participants about the tax benefits of the 419 Program as well as other xélan programs, and whether xélan should be enjoined from such conduct. *See* I.R.C. § 7408.

I.R.C. § 6111(a) requires the registration of certain tax shelters and I.R.C. § 6112 requires those who organize a "potentially abusive tax shelter" to maintain a list of investors to be made available at the request of the IRS. I.R.C. § 6707 and § 6708 impose penalties for violations, respectively, of §§ 6111 and 6112. Higgins is also investigating to determine if the xélan programs qualify as tax shelters subject to the registration, disclosure and reporting requirements described. (Higgins Decl. ¶ 29).

Higgins caused the administrative summons to be served on AmerUs. It seeks detailed information about the 419 Program and its participants for the asserted purpose of furthering the investigation described in his declaration.

## DISCUSSION

■ The IRS may issue an administrative summons to third-party record keepers for the purpose of determining the correctness of any tax return, the liability of any person for any internal revenue tax, or inquiring into any offense connected with the administration or enforcement of the internal revenue laws. I.R.C. §§ 7602(a), (b), 7609. A person entitled to notice of a summons has the right to initiate a proceeding to quash the summons in response to which the government may seek to compel compliance. I.R.C. § 7609(b)(2). When a summons is thus challenged, the government must first make a prima facie showing of four elements, (1) the investigation is pursuant to a legitimate purpose; (2) the information sought by it may be relevant to that pur-

pose; (3) the IRS does not already possess the requested information; and (4) the proper administrative steps have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The burden here is slight, *Robert v. United States,* 364 F.3d 988, 996 (8th Cir.2004), and is often satisfied by the declaration of the investigating agent attesting to the required elements. *United States v. Gertner,* 65 F.3d 963, 966–67 (1st Cir.1995).

██ If the government makes the prima facie showing, the burden shifts to the party challenging the summons to rebut one of the elements of the prima facie case "or ... demonstrate that judicial enforcement of the summons will otherwise constitute an abuse of the court's process." *United States v. Claes,* 747 F.2d 491, 494 (8th Cir.1984); *see Powell,* 379 U.S. at 57–58, 85 S.Ct. 248. The burden on rebuttal is a heavy one. *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *see Robert,* 364 F.3d at 996.

### A. The Government's *Prima Facie* Case

██ The government tenders the declaration of Agent Higgins for its prima facie case. Higgins states that he is conducting a tax shelter compliance investigation of xélan to determine whether it is subject to a § 6700 penalty and related injunctive relief, and if the 419 Program and other xélan programs identified by Higgins are subject to the tax shelter registration, disclosure and reporting requirements of the Internal Revenue Code. His declaration in this regard is a sufficient prima facie showing of a legitimate purpose.

██ Generally, the summons seeks disclosure of all life insurance products issued on the lives of xélan members through participation in the 419 Program, documents pertaining to discussions be-

tween AmerUs and xélan concerning the 419 Program, any agreement to provide life insurance products for the program, and documents bearing upon the relationship between AmerUs and various xélan entities with respect to the 419 Program. Relevancy in this context is an elastic standard, the IRS need only show that the documents "may be relevant" to its investigation, *Powell,* 379 U.S. at 57–58, 85 S.Ct. 248, in the sense that the "information might shed some light on the tax return." *United States v. Norwest Corp.,* 116 F.3d 1227, 1233 (8th Cir.1997). Clearly, the life insurance products purchased to fund the benefits payable under the 419 Program, as well as documents which bear upon the selection of AmerUs life insurance products and the relationship between AmerUs and the xélan entities may be relevant to a tax shelter compliance investigation like that described by Agent Higgins.

Production of the documents would result in disclosure to the IRS of the identities of 419 Program participants. Anticipating xélan's objection to disclosure of the identity of its participants, Higgins states that the information will enable the IRS to inquire of participants about what information they received from xélan and its representatives, and what statements were made by xélan in promoting the tax benefits of the 419 Program. Such information is relevant to determining whether xélan has engaged in conduct warranting a penalty under I.R.C. § 6700.

Higgins also states that by reason of an IRS notice (discussed more fully below) the 419 Program is a "reportable transaction" requiring xélan to produce a list of all investors in the program. (Higgins Decl. ¶ 33(A)). Finally, Higgins notes that xélan, Inc. and three other xélan entities filed a Chapter 11 bankruptcy petition on June 30, 2004. The information sought by the summons may aid the IRS in prosecut-

ing claims in bankruptcy against the xélan entities for taxes and penalties. (*Id.* ¶ 33(C)).[4]

Agent Higgins' declaration sufficiently establishes the prima facie relevancy of the summons, including to the extent it seeks the identity of 419 Program participants. *Cf. Cohen,* 306 F.Supp.2d at 501–02.

With respect to the last two prima facie elements, Agent Higgins states the documents sought by the summons are not already in the possession of the IRS and that all administrative steps required for issuance of the summons have been taken.

The Court concludes the government has made prima facie showing for enforcement of the summons.

### B. Xélan's Rebuttal

#### 1. *The prima facie case*

Xélan does not dispute the prima facie validity of the investigation except to the extent the summons seeks the identity of 419 Program participants, which is part of xélan's bad faith argument discussed below. There appears to be no dispute that a third-party summons under the authority of I.R.C. § 7602(a), § 7609(a) may issue in aid of a tax shelter compliance investigation like that described by Agent Higgins. Nor does xélan contest the relevancy of the documents sought by the summons beyond a conclusory allegation in the petition that to the extent the identities of participants would be revealed the docu-

ments and information are irrelevant to the tax shelter investigation.

■ In its brief in opposition to the motion for summary enforcement, xélan attacks the third and fourth elements of the prima facie case. It contends the government has failed to show that the documents and information sought by the summons are not already in IRS's possession and it argues the proper administrative steps were not followed because the IRS failed to give notice to third-parties referred to in the summons.

Xélan says that it, and various participants in its programs, have produced thousands of pages of documents to the IRS, including the insurance policies held by the 419 Program. (*See* Colvin Decl., Ex. B ¶¶ 31, 32). An allegation that thousands of documents have been produced is not sufficient to rebut the prima facie case concerning documents sought from AmerUs. Apart from the insurance policies, the summons seeks AmerUs' business records concerning the policies and AmerUs' relationship with xélan of a kind and extent it is not likely xélan or the participants could have produced completely. Moreover, the insurance policies produced by xélan are not complete because the identity of the participants has been redacted. Enforcement of the summons will undoubtedly result in the production of some of the same documents previously produced by xélan and program participants, but "IRS is entitled, and it is a legitimate purpose to

---

**4.** Following notice of the bankruptcy, the Court inquired of the parties as to their positions concerning the effect of the bankruptcy petition on these proceedings. The Court agrees with the government that assuming enforcement of a third-party summons is subject to the automatic stay provisions in 11 U.S.C. § 362(a) (a doubtful proposition) issuance of the summons pursuant to the IRS's attempt to audit the compliance of xélan, Inc. with the internal revenue laws would appear to be excepted from the stay by 11 U.S.C. § 362(b)(9)(A). *See United States v. Arthur Andersen & Co.,* 623 F.2d 725, 728 (1st Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980); *In re Greene,* 50 B.R. 785, 787 (S.D.N.Y.1985). Xélan's brief in opposition to the motion for summary enforcement was filed long after the bankruptcy petition and does not contend the bankruptcy stay has any bearing.

summon, original documents so as to check their consistency and completeness with those obtained elsewhere." *Cohen,* 306 F.Supp.2d at 504 (quoting *United States v. Administration Co.,* 1994 WL 240518, at *3 (N.D.Ill. May 31, 1994)).

■ Xélan next argues with respect to the prima facie case that not all of the required administrative steps were taken because the IRS did not give notice to all those identified in the summons as required by I.R.C. § 7609(a)(1). Agent Higgins states that timely notice of the summons was given by certified or registered mail to each of the petitioners in conformity with I.R.C. § 7609(a)(1), (2). Xélan does not argue otherwise. It maintains, however, that the notice provision requires that notice not only be given to those individuals or entities identified by name in the summons, but also to those categorically identified as persons with respect to whom the IRS seeks information, here other 419 Program participants and their professional corporations. Xélan alleges the IRS knows the identities of approximately fifty participant doctors who are under audit, but did not give them notice of the summons.

In the November 18 Report the Court determined the plain meaning of the statute required the IRS notify only those persons identified in the summons and that notice of the type given here to persons identified by name was sufficient. (*Id.* at 19–21). The discussion and conclusions set out therein are incorporated by reference as a part of this report and recommendation.

### *2. Bad Faith/Improper Purpose*

■ Apart from the prima facie case, xélan attacks the summons on four other grounds which may be characterized generally under the heading of bad faith or improper motive. Xélan argues (1) the IRS has advanced "mutually exclusive rationales" for the summons in this case and that concerning the Cohen taxpayers in No. M–03–83; (2) the true purpose of the summons is not to determine xélan's liability for penalties under I.R.C. § 6700, but to obtain the identities of other xélan program participants in order to examine their returns; (3) there is evidence a criminal referral is in effect rendering the summons unenforceable under I.R.C. § 7602(d); and (4) the alleged malfeasance in Florida of IRS Agent John Wong in improperly copying certain software and database information pertaining to the xélan Foundation is probative of bad faith on the part of the IRS.

### (a) Mutually Exclusive Rationales

It is apparent the IRS takes a dim view of arrangements like the 419 Program. The Cohen summons in No. M–03–83 was issued to AmerUs for the asserted purpose of assisting in determining the tax liability of a program participant. The present summons is the same in many respects, though more comprehensive in several particulars, than the Cohen summons. From the Court's review of both it appears that all of the documents described in the Cohen summons would be subject to production in response to the summons in this case.

As indicated previously, in order for the 419 Program to provide the tax benefits it aspires to, it must meet the requirements of I.R.C. § 419A(f)(6) pertaining to "10-or–more employer" plans. In *Booth v. Comm'r of Internal Revenue,* 108 T.C. 524, 1997 WL 328581 (1997), the tax court analyzed the attributes of such a plan noting, in substance, that the typical § 419A(f)(6) plan is one in which the relationship of the participating employer to the plan resembles the relationship of an insured to an insurer. *Id.* at 574, 1997 WL 328581. Statutorily, plans which "maintain[ ] expe-

rience-relating arrangements with respect to individual employers" are excepted from I.R.C. § 419A(f)(6)(A) as the employer's interest in that situation is more like "the relationship of an employer to a fund than an insured to an insurer." *Booth*, 1997 WL 328581, 108 T.C. at 574 (quoting H.R.Rep. No. 98–51 at 1159). Risk shifting and distribution are characteristics of insurance and the relevant factors identified by the *Booth* court look for the presence or absence of these. *Id.* at 1997 WL 328581, 108 T.C. at 575–76.

In the case of the Cohen summons in No. M–03–83 the IRS asserted information about other participants was relevant because it was investigating whether the 419 Program met the requirements of § 419A(f)(6). While reserving judgment with respect to the identities of other participants, the November 18 Report agreed with the IRS that information about other participants in the 419 Program " 'might shed some light' on the true character of the program and with it, the correct income tax liability of the Cohens." (November 18 Report at 12).

In the present proceeding the IRS makes a direct assault on the 419 Program on the basis that it is a tax shelter subject to the registration, disclosure and record-keeping requirements of I.R.C. §§ 6111, 6112 and the penalty provisions of § 6700(a). The IRS says that in a published notice issued June 5, 1995, Notice 95–34, it signaled it would disallow deductions under arrangements like the 419 Program. In 2000 the IRS published another notice, Notice 2000–15, in which it formally "listed" transactions described in Notice 95–34 as tax avoidance transactions which, in the view of the IRS, subjects the 419 Program to the disclosure requirements of I.R.C.

§ 6112 as a "potentially abusive tax shelter". (*See* Higgins Decl., Ex. 1, 2).

Thus, with the Cohen summons, the IRS took the position it needed the documents to determine whether the 419 Program qualified as a "10–or–more employer" under I.R.C. § 419A(f)(6), but in this case seems to have made a determination that the 419 Program does not qualify.[5] Xélan views these positions as inconsistent. It succinctly puts its complaint this way:

> Is the government just trying to discover the facts, and make a determination as to the merits of the program, as it insisted in pleadings in the prior summons case? Or has the government already made a determination that the 419 Plan is not an acceptable arrangement, which should have been registered as a tax shelter, as suggested in this case? The government cannot have its cake and eat it too.

(Pet. Brief in Opposition at 14).

While xélan can be forgiven for feeling whipsawed by these summonses, the IRS's differing relevancy claims in support of each summons are not a case of the IRS having its cake and eating it too, so much as of the IRS helping itself to two slices from different sides of the same cake. Nothing prohibits the IRS from undertaking concurrent investigations into whether the 419 Program is a bona fide welfare benefit plan and whether the plan has been sold through conduct subject to penalty or injunction under I.R.C. §§ 6700, 7408. That the IRS has sought essentially the same documents from AmerUs as a part of investigations which have a different purpose is not probative that either investigation is in bad faith or for an improper purpose. Lastly, it does not appear to the Court that the IRS is necessar-

---

5. The Court believes this to be the case notwithstanding Agent Higgins' declaration that he is conducting an investigation to determine "whether" the 419 Program and other xélan plans are tax shelters subject to the code provisions discussed.

ily taking inconsistent positions when it says in one case it is investigating to determine if the plan satisfies the requirements of I.R.C. § 419A(f)(6) and takes the position in another that in fact the plan does not meet the requirements. The IRS's broad investigative authority should allow it to act on its view of the tax status of the 419 Program, of which the IRS has apparently given notice, while continuing to investigate the merits of the issue in another case.

### (b) Improper Purpose

■ Xélan next asserts that the summons is for the improper purpose of obtaining the identities of other 419 Program participants for possible examination of those participants' tax returns. The same objection was made in No. M–03–83. Having now reviewed the record in both this case and in No. M–03–83 the Court does not doubt that a purpose for both summonses is to identify other taxpayers who may be subject to examination. However, relevancy of the summons to an additional, legitimate purpose for which a summons may be obtained swallows this issue.

If the sole purpose of the summons was to find other taxpayers for the IRS grist-mill the information sought from AmerUs would not be relevant to Higgins' investigation which concerns only the conduct of xélan in marketing the 419 Program and its compliance with various statutory requirements. In such a case, the identity of other participants could be obtained from AmerUs by administrative summons, if at all, only through a "John Doe" summons under the procedure outlined in I.R.C. § 7609(f). The "John Doe" summons process requires, among other things, a court proceeding at which the IRS must establish a reasonable basis for believing that a group or class of unidentified persons may fail, or may have failed, to comply with the internal revenue laws. Because unidentified persons have no opportunity to institute proceedings to quash such a summons, § 7609(f) substitutes the Court to "take[ ] the place of the affected taxpayer" in order to "exert[ ] a restraining influence on the IRS" through the required findings. *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 321, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985). Xélan maintains that the AmerUs summons is an attempt to circumvent the requirements of § 7609(f).

Xélan has produced no evidence to conclude otherwise than that Agent Higgins is in fact conducting the tax shelter compliance investigation he describes in his declaration. The information sought from AmerUs concerning other 419 Program participants, including their identities, is relevant to that investigation as discussed previously. That being the case, "it makes no difference if the government has the additional purpose of discovering the identities of others it may wish to examine." (November 18 Report at 22, citing *Tiffany*, 469 U.S. at 323–24, 105 S.Ct. 725). *Tiffany* holds the § 7609(f) John Doe summons procedure need not be followed in the case of a "dual purpose" summons. 469 U.S. at 317–18, 320–24, 105 S.Ct. 725; *see United States v. Barter Systems, Inc.*, 694 F.2d 163–69 (8th Cir.1982). *Tiffany* involved a summons issued to the taxpayer under examination whereas this case involves a summons issued to a third party whose tax returns are not being examined, but that contextual distinction should not make a difference under the analysis in *Tiffany*. Xélan received notice of the summons, and has "a direct incentive to oppose enforcement." 469 U.S. at 321, 105 S.Ct. 725. "All [Congress] did was require that a party with a real interest in the investigation—or the district court in the John Doe context—have standing to challenge the IRS's exercise of its summons authority." *Id.* at 322, 105 S.Ct. 725.

If, as the Court has found, the summoned information is relevant to a legiti-

mate investigation of xélan, xélan cannot be heard to complain that the IRS also wants the information to identify taxpayers for examination.

(c) Criminal Referral

 An administrative summons may not issue in aid of a Justice Department investigation. I.R.C. § 7602(d)(1) states:

... No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

A Justice Department referral is in effect if the IRS has made a recommendation to the Attorney General for a grand jury investigation, or a criminal prosecution, of a criminal tax offense, or the Justice Department has made a request under I.R.C. § 6103(h)(3)(B) for the disclosure of return information with respect to the subject of the summons. I.R.C. § 7602(d)(2)(A)(i), (ii). In his declaration Agent Higgins says that no Justice Department referral has been made with respect to xélan, Inc., the subject of the summons, nor has the Justice Department made any disclosure request relating to xélan, Inc.

Xélan questions the accuracy of these representations, noting that in July 2004 a grand jury subpoena was issued to Vanguard Group, Inc. from the Southern District of California bearing the reference "No. 04–16–XÉLAN/FAD" and seeking records of account information managed by Vanguard on behalf of individuals and entities represented by ten identified xélan entities. (Colvin Decl., Ex. D). Xélan argues the subpoena is evidence of a criminal investigation of xélan.

The IRS realizes it "may not seek to obtain information about a person through its summons power if that same person is also under grand jury investigation for tax crimes, or has been recommended for prosecution to the Department of Justice, for tax crimes." (Gov't Reply Brief at 3). *See United States v. Stuart,* 489 U.S. 353, 362–63, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989) (citing and quoting in part *LaSalle Nat'l Bank,* 437 U.S. at 312, 98 S.Ct. 2357). The government stands by Higgins' declaration that there has been no Justice Department referral or request for disclosure of return information. The grand jury subpoena does indicate that there is a criminal investigation involving certain of the xélan entities in some manner, but it is not evident that those entities, or xélan, Inc. specifically, are the target of the investigation, or that the investigation is with respect to tax crimes. Evidently xélan has not been notified by the U.S. Attorney that it is a target of the grand jury investigation, or it would have said so. There is not much this Court or the IRS can do to obtain further information about a pending grand jury investigation. In the Court's judgment, the grand jury subpoena standing alone does not put the lie to Higgins' declaration or deprive the IRS of the authority to issue or enforce the summons to AmerUs.

(d) John Wong.

The alleged malfeasance of Agent Wong in acquiring a xélan Foundation donor list by illegitimate means is not probative that the summons at issue here is tainted by improper motive. The Court concludes for the same reasons discussed in the November 18 Report that "the allegations stemming from the Wong episode do not implicate the institutional posture of the IRS or otherwise support quashing the summons." (November 18 Report at 23–25).[6]

---

6. The present petition, as did the petition concerning the summons in No. M–03–83, alleges

that "[t]he summons fails to describe the doc-

### C. Evidentiary Hearing

 In describing the relief it seeks, xélan asserts that if the motion for summary enforcement is not denied, the Court should hold an evidentiary hearing with respect to the issues raised by xélan. The necessity of an evidentiary hearing has not been briefed. Xélan does not identify the disputed factual issues appropriate for such a hearing. The Eighth Circuit has said "[a]n evidentiary hearing is necessary only where substantial deficiencies in the summons proceedings are raised by the party challenging the summons." *United States v. National Bank of South Dakota,* 622 F.2d 365, 367 (8th Cir.1980); *see United States v. U.S. Bancorp,* 12 F.Supp.2d 982, 986 (D.Minn.1998). It follows from the discussion above that xélan has not raised substantial deficiencies in the summons proceedings. In the main the deficiencies claimed involve points of law which can appropriately be resolved on the basis of known, or assumed facts.

The objections of intervenor AmerUs remain for resolution. If the recommended disposition below is adopted counsel for the government and AmerUs should be ordered to confer in an effort to narrow or resolve AmerUs' objections (which involve primarily time and place issues based on I.R.C. § 7605) and report to the Court concerning the status of AmerUs' objections within twenty (20) days of the date of the order adopting the recommendation.

### RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED that petitioner's Petition to Quash Summons be **denied** and that respondent's Motion for Summary Enforcement of the administrative summons in issue be **granted.**

uments and information sought with reasonable particularity." (Pet.¶ 6(b)). This alleged deficiency is not addressed in the briefs.

IT IS ORDERED that the parties have until **January 12, 2005** to file written objections to the recommendation in the preceding paragraph, pursuant to 28 U.S.C. § 636(b)(1). *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir.1990); *Wade for Robinson v. Callahan,* 976 F.Supp. 1269, 1276 (E.D.Mo.1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed.R.Civ.P. 72; *Thompson,* 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir.1994); *Halpin v. Shalala,* 999 F.2d 342, 345 & n. 1, 346 (8th Cir.1993); *Thompson,* 897 F.2d at 357.

IT IS SO ORDERED.

December 23, 2004.

Having reviewed the subpoena the Court disagrees with the characterization. *See* November 18 Report at 26 n. 7.